**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| DOG BITES BACK, LLC,            )<br>                                                  )<br>                       Plaintiff,      )<br>            vs.                              )<br>                                                  )<br>JPMORGAN CHASE BANK, N.A., )<br>                                                  )<br>                       Defendant.   )<br>_____ ) | Case No.: 2:20-cv-01459-GMN-DJA<br><br>**ORDER** |

Pending before the Court is the Motion to Dismiss, (ECF No. 13), filed by Defendant JPMorgan Chase Bank, N.A. ("JPMorgan"). Plaintiff Dog Bites Back, LLC ("DBB") filed a Response, (ECF No. 14), to which JPMorgan filed a Reply, (ECF No. 15). For the reasons discussed herein, JPMorgan's Motion to Dismiss is **GRANTED in part** and **DENIED in part**.

**I.     BACKGROUND**

This case arises from JPMorgan's approval and processing of forty-three (43) counterfeit checks, which were forged by Plaintiff's employee. (*See generally* Compl., Ex. A to Pet. Removal, ECF No. 1-1). On July 16, 2008, DBB opened a business account (the "Account") with Washington Mutual Bank. (*Id*. ¶ 5). DBB authorized three signatures on file. (*Id*. ¶ 6). In September 2008, JPMorgan purchased Washington Mutual Bank. (*Id*. ¶ 7). From that point on, DBB became a customer of JPMorgan. (*Id*.).

Between June 18, 2019 and March 24, 2020, Kimberley Howes, DBB's accounting manager, forged forty-three (43) checks, which totaled approximately $142,457.35. (*Id*. ¶¶ 9–10). Upon discovering the discrepancies in its accounting, DBB notified JPMorgan of the discovered forgeries. (*Id*. ¶¶ 8, 14). On April 8, 2020, JPMorgan denied DBB's requested reimbursement in its entirety. (*Id*. ¶ 15). DBB sent JPMorgan a demand letter on June 4, 2020. (*Id*. ¶ 16). JPMorgan did not respond. (*Id*.).

On June 16, 2020, DBB filed a Complaint in the Eighth Judicial District Court, alleging the following causes of action: (1) violation of NRS 104.3405; (2) violation of NRS 104.3406; (3) breach of contract; (4) breach of the implied covenant of good faith and fair dealing; and (5) negligence. (Compl. ¶¶ 17–48). JPMorgan removed the case to federal court on the basis of diversity jurisdiction. (*See* Pet. Removal ¶ 8, ECF No. 1). On September 4, 2020, JPMorgan then filed the instant Motion to Dismiss, (ECF No. 13).

## II.   LEGAL STANDARD

Dismissal is appropriate under Rule 12(b)(6) where a pleader fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A pleading must give fair notice of a legally cognizable claim and the grounds on which it rests, and although a court must take all factual allegations as true, legal conclusions couched as a factual allegations are insufficient. *Twombly*, 550 U.S. at 555. Accordingly, Rule 12(b)(6) requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

"Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990). "However, material which is properly submitted as part of the complaint may be considered." *Id.* Similarly, "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss." *Branch v.*

*Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994).  On a motion to dismiss, a court may also take judicial notice of "matters of public record." *Mack v. S. Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986).  Otherwise, if a court considers materials outside of the pleadings, the motion to dismiss is converted into a motion for summary judgment. Fed. R. Civ. P. 12(d).

If the court grants a motion to dismiss for failure to state a claim, leave to amend should be granted unless it is clear that the deficiencies of the complaint cannot be cured by amendment. *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992).  Pursuant to Rule 15(a), the court should "freely" give leave to amend "when justice so requires," and in the absence of a reason such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

### III. DISCUSSION

JPMorgan moves to dismiss DBB's claims, arguing that: (1) DBB fails to plausibly allege that JPMorgan failed to exercise ordinary care under NRS 104; (2) DBB fails to identify the alleged contract; (3) DBB is precluded from bringing a common law claim of negligence because the UCC displaces common law claims; and (4) DBB fails to state a plausible claim of negligence. (JPMorgan's Mot. Dismiss ("MTD") at 4–8).  Plaintiff opposes dismissal of all its claims except for the breach of contract claim. (*See* Resp. to MTD at 4–9, ECF No. 14). Accordingly, the Court dismisses Plaintiff's breach of contract claim without prejudice[1] and limits its below discussion to the remaining claims—namely, violation of NRS 104.3405, violation of NRS 104.3406, breach of the implied covenant of good faith and fair dealing, and negligence.

---

[1] Plaintiff stipulates to dismissing the breach of contract claim without prejudice. (Resp. to MTD 7:26–8:6).

### A. Violations of NRS 104.3405 and NRS 104.3406

DBB, in its Complaint, alleges that JPMorgan failed to exercise ordinary care in violation of NRS 104.3405(2) and 104.3406. (Compl. ¶¶ 17–30). JPMorgan argues that DBB's claims under NRS 104 fail because DBB has not sufficiently alleged how JPMorgan failed to exercise ordinary care as defined by the statute. (MTD 4:1–6:22).

In Nevada, there are two UCC provisions that create causes of action by an employer against a depositary bank to recover instruments fraudulently endorsed by an employee. NRS 104.3405 creates a cause of action in negligence against a depositary bank wherein an employee entrusted with responsibility over the instrument fraudulently endorses the instrument. *See* NRS 104.3405(2) and cmt. 1. Relatedly, NRS 104.3406 imposes liability on a person who negligently contributes to altering or forging an instrument. *See* NRS 104.3406(1). Both statutes impose liability if a person fails to exercise ordinary care.

NRS 104.3103 defines ordinary care as the "observance of reasonable commercial standards, prevailing in the area in which the person is located, with respect to the business in which the person is engaged." NRS 104.3103(1)(f). Specifically, "[i]n the case of a bank that takes an instrument for processing for collection or payment by automated means, reasonable commercial standards do not require the bank to examine the instrument if the failure to examine does not violate its prescribed procedures and its procedures do not vary unreasonably from general banking usage not disapproved by this Article or Article 4." *Id*.

As applied to the present case, DBB does not identify any JPMorgan procedures concerning check forgery. DBB also does not allege how JPMorgan's failure to compare the signatures on the forty-three (43) checks violated the non-alleged policies, or even general banking usage. Though DBB articulates the specific ways in which JPMorgan lacked ordinary care (*i.e.*, failure to examine the forged checks and flag the irregularities in the signatures), DBB fatally fails to allege how JPMorgan's actions violated its prescribed procedures under

NRS 104.3103's definition of "ordinary care."  Accordingly, the Court grants JPMorgan's Motion to Dismiss and dismisses DBB's claims under NRS 104.3405 and 104.3406.

**B. Breach of the Implied Covenant of Good Faith and Fair Dealing**

DBB also alleges that JPMorgan breached the implied covenant of good faith and fair dealing when it failed to monitor the checks and compare the signatures on the checks to the authorized signatures on file for the Account. (Compl. ¶¶ 37–43).  In its Motion to Dismiss, JPMorgan argues that DBB fails to allege sufficient facts to demonstrate that the parties had a contractual relationship—the first requirement for demonstrating a breach of the implied covenant of good faith and fair dealing. (Reply 6:17–26, ECF No. 15).

Under Nevada law, "[e]very contract imposes upon each party a duty of good faith and fair dealing in its performance and execution." *A.C. Shaw Constr. v. Washoe Cty.*, 105 Nev. 913, 784 P.2d 9, 9 (Nev. 1989) (quoting Restatement (Second) of Contracts § 205).  To establish a claim for breach of the implied covenant of good faith and fair dealing, a plaintiff must prove: (1) the existence of a contract between the parties; (2) that the defendant breached its duty of good faith and fair dealing by acting in a manner unfaithful to the purpose of the contract; and (3) the plaintiff's justified expectations under the contract were denied. *See Perry v. Jordan*, 111 Nev. 943, 900 P.2d 335, 338 (Nev. 1995) (citing *Hilton Hotels Corp. v. Butch Lewis Prod., Inc.*, 107 Nev. 226, 808 P.2d 919, 922-23 (Nev. 1991)).

Here, DBB states a plausible claim that JPMorgan breached the implied covenant of good faith and fair dealing.  DBB, in its Complaint, alleges that it contracted with Washington Mutual Bank in 2008 when DBB opened a bank account with Washington Mutual Bank. (Compl. ¶ 5).  DBB later formed a contract with JPMorgan "when the Account was assumed by Chase in September 2008, after Chase's purchase of Washington Mutual Bank." (*Id*. ¶ 32).  Though JPMorgan argues that it never conceded to a contractual relationship with DBB, the allegations show that a contract likely existed between DBB and JPMorgan.  Construing the

evidence in favor of the plaintiff, as is required at the pleading stage, DBB has plausibly alleged that a contract existed between DBB and JPMorgan. *Twombly*, 550 U.S. at 555. DBB further alleges that JPMorgan owed it a duty of good faith to appropriately monitor and safeguard DBB's assets entrusted to JPMorgan. (Compl. ¶ 39). Therefore, DBB has plausibly alleged that JPMorgan breached the implied covenant of good faith and fair dealing.[2] The Court accordingly denies JPMorgan's Motion to Dismiss as to the breach of implied covenant of good faith and fair dealing.

**C. Negligence**

Lastly, DBB alleges that JPMorgan owed it a duty to appropriately monitor and safeguard its account and breached such duty by failing to appropriately monitor Plaintiff's Account. (Compl. ¶¶ 44–48). Defendant asserts that Plaintiff cannot seek relief under the UCC while simultaneously seeking relief under common law negligence. (MTD 7:13–24).

There is little caselaw on whether NRS 104 displaces common law causes of action.[3] However, the Commentary to NRS 104.1103 provides illuminating insight, explaining:

> [W]hile principles of common law and equity may supplement provisions of the Uniform Commercial Code, they may not be used to supplant its provisions, including the purposes and policies those provisions reflect, unless a specific provision of the Code provides otherwise. In the absence of such a provision, the Uniform Commercial Code preempts principles of common law and equity that are inconsistent with either its provisions, or its purposes and policies.

---

[2] The fact that DBB stipulated to dismissing its breach of contract claim has no bearing on its claim for breach of the implied covenant of good faith and fair dealing. Both claims require a plaintiff to demonstrate the existence of a contract. *See Perry v. Jordan*, 111 Nev. 943, 900 P.2d 335, 338 (Nev. 1995) (listing the elements for a breach of implied covenant of good faith claim); *Calloway v. City of Reno*, 116 Nev. 250, 993 P.2d 1259, 1263 (Nev. 2000) (outlining the elements for a breach of contract claim). DBB explains, in its Response, that it stipulates to dismissing its breach of contract claim because it does not have a copy of the Agreement. (Resp. to MTD 7:28–8:6). This implies that an Agreement exists; however, DBB is unable to properly allege breach of contract without the terms of the Agreement. Construing all factual inferences in the plaintiff's favor, DBB has plausibly alleged that the parties formed an agreement when JPMorgan purchased Washington Mutual Bank and assumed its account with DBB. (Compl. ¶ 7).

[3] Indeed, the parties note that NRS 104 does not have a provision specifically displacing common law causes of action. (*See* Reply to MTD 3:9–12).

Nev. Rev. Stat. Ann. § 104.1103 cmt. 2.  In other words, the UCC preempts causes of action "displaced by provisions of this code." *See id*.  Plaintiff, in this case, alleges two causes of action based on NRS 104.3405 and 104.3406. (Compl. ¶¶ 17–30).  The negligence claim is based on the same factual scenario, namely that Defendant breached its duty by failing to appropriately monitor Plaintiff's account and to properly review the authorized signatures on file with the forged checks. (*Id*. ¶ 46).  Given that two specific UCC provisions apply, the UCC preempts DBB's common law negligence claim. *See* NRS 104.1103(2).  California courts have similarly held that "[t]he UCC displaces common law claims based on 'any situation covered by particular provisions of the [UCC].'" *Evans Tire & Serv. Ctrs. v. Bank of Am.*, No. 11cv2128 WQH (WVG), 2012 U.S. Dist. LEXIS 35295, at *18 (S.D. Cal. Mar. 14, 2012) (citing *Zengen, Inc. v. Comerica Bank*, 41 Cal. 4th 239, 254, 59 Cal. Rptr. 3d 240, 158 P.3d 800 (2007) (quotation omitted); *see also Comm. Standard Ins. Co. v. Tab Constr., Inc.*, 94 Nev. 536, 583 P.2d 449, 451 (Nev. 1978) (explaining that Nevada courts look to California law where Nevada case law is silent).

Plaintiff cites another sister court's decision in *24-7 Grp. of Cos., Inc. v. Roberts*, in support of its assertion that both contract and negligence claims may proceed under NRS 104. *24-7 Grp. of Cos., Inc. v. Roberts*, No. 3:13-cv-00211-MMD-WGC, 2014 U.S. Dist. LEXIS 5358 (D. Nev. Jan. 13, 2014).  The Court in *24-7 Grp. of Cos., Inc.*, however, did not discuss whether the UCC precluded a common law negligence claim. *Id*. at 11–12.  There, the bank argued that the plaintiff cannot recover economic losses under a negligence theory absent personal injury or damage to the property. *Id*.  Analyzing the economic loss doctrine under Nevada state law, the Court ultimately determined that the plaintiff could bring a common law negligence claim against the bank for an otherwise purely economic loss. *Id*.  Unlike *24-7 Grp. of Cos., Inc.*, neither party in the instant case applies the economic loss doctrine.  In light of

NRS 104.1103 and Plaintiff's failure to rebut Defendant's argument, the Court thus grants Defendant's Motion to Dismiss as to the negligence claim.

**D.  Leave to Amend**

If the Court grants a motion to dismiss, it must then decide whether to grant leave to amend.  The Court will "freely give" leave to amend when there is no "undue delay, bad faith[,] dilatory motive on the part of the movant . . . undue prejudice to the opposing party by virtue of . . . the amendment, [or] futility of the amendment . . . ." Fed. R. Civ. P. 15(a); *Foman v. Davis*, 371 U.S. 178, 182 (1962).  Generally, leave to amend is only denied when it is clear that the deficiencies of the complaint cannot be cured by amendment. *See DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992).

As explained above, the Court dismisses the following claims: (1) violation of NRS 104.3405; (2) violation of NRS 104.3406; (3) breach of contract; and (4) negligence.  As to DBB's violations under NRS 104, the Court grants DBB leave to amend.  However, as to DBB's negligence cause of action, the Court will not provide DBB leave to amend given that the UCC displaces common law claims under NRS 104.3405 and 104.3406.  In short, amendment is futile regarding DBB's negligence claim.

///

## IV. CONCLUSION

**IT IS HEREBY ORDERED** that Defendant JPMorgan's Motion to Dismiss, (ECF No. 13), is **GRANTED in part** and **DENIED in part**.  Plaintiff DBB has plausibly alleged a claim for breach of the implied covenant of good faith and fair dealing.  In contrast, DBB has not plausibly alleged claims under under NRS 104.3405 and 104.3406, and they are dismissed without prejudice with leave to amend.  DBB's claim for breach of contract is also dismissed without prejudice.  Lastly, DBB's claim for negligence is dismissed with prejudice.

**IT IS FURTHER ORDERED** that if DBB elects to amend its claims that are dismissed without prejudice, DBB shall have twenty-one days from the date of this Order to do so.

**DATED** this __23__ day of September, 2021.

_____
Gloria M. Navarro, District Judge
UNITED STATES DISTRICT COURT